**In re Reginald D.J. WALDEN, Debtor.**

**Robert Brillon and Karen Brillon, Douglas S. Libertore and Sabra Libertore, Plaintiffs,**

v.

**Reginald D.J. Walden, Defendant.**

**Bankruptcy No. 8:06–BK–5698–PMG. Adversary No. 8:07–ap–23–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 8, 2008.

Michele C. Pittman–Gellis, Lathrop & Gage, L.C., Kansas City, MO, Patrick T. Lennon, MacFarlane Ferguson & McMullen, Tampa, FL, for Plaintiffs.

Benjamin G. Martin, Law Offices of Benjamin Martin, Sarasota, FL, for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Complaint to Deny Discharge under 11 U.S.C. § 727 filed by the Plaintiffs, Robert and Karen Brillon, and Douglas and Sabra Libertore.

The Plaintiffs contend that the discharge of the Debtor, Reginald D.J. Walden, should be denied because the Debtor (1) fraudulently transferred property within one year of the bankruptcy filing, (2) knowingly and fraudulently made a false oath in connection with his bankruptcy case, and (3) failed to explain satisfactorily a loss of assets with which to meet his liabilities. Consequently, the Plaintiffs assert that the Debtor's discharge should be denied pursuant to § 727(a)(2)(A), § 727(a)(4), and § 727(a)(5) of the Bankruptcy Code. (Transcript, p. 7).

### Background

The Debtor is a martial arts instructor in Sarasota, Florida.

Prior to August of 2003, the Debtor was employed as a fitness instructor at the YMCA. At the time of his departure from the YMCA, certain of his students paid for the Debtor to form a corporation so that he could establish his own karate school. (Transcript, pp. 111–12, 133–34).

On August 29, 2003, the Debtor formed a corporation known as Reggies Fit–N–Kick, Inc. (Plaintiffs' Exhibit 3).

In late 2003 or 2004, a group of individuals agreed to fund the opening and operation of a martial arts studio by the Debtor. One of the individuals, Robert Brillon, assisted the Debtor with the business arrangements necessary for the venture. (Transcript, pp. 44–45).

On August 19, 2004, the Debtor signed a Commercial Lease with Jesse Soltis of the Soltis Family LLC. (Debtor's Exhibit 7). Pursuant to the Lease, the Debtor, "of Reggie Fit and Kick, Inc., a Florida corporation," leased approximately 5,000 square feet of space on Clark Road in Sarasota. The rent payment under the Lease was $4,511.46 per month for the first three months of the Lease term. Additionally, the Lease provided for a security deposit in the amount of $7,500.00 to be paid upon signing of the Lease.

On October 1, 2004, the corporation known as Reggies Fit–N–Kick, Inc. was administratively dissolved by the Secre-

tary of State of the State of Florida. (Plaintiffs' Exhibit 3).

On October 28, 2004, the Debtor signed a Promissory Note payable to Karen R. Brillon in the original principal amount of $10,000.00. (Plaintiffs' Exhibit 2). The Promissory Note provided in part as follows:

WHEREAS: The Borrower has entered into a three year lease agreement for space at 4297–4305 Clark Road to be used as a Health, Fitness, Exercise and Wellness center, and

WHEREAS: The Borrower needs to fund this start-up business for use in interior construction, equipment, fixtures, deposits, front office set-up and the like all from borrowed revenue.

NOWTHERFORE: The parties hereby agree to the following arrangements to loan and repay such funds as set forth herein:

1—Lender shall provide Borrower an amount of $10,000.00, the receipt of which is hereby acknowledged to be used exclusively for start-up expenses as identified in the attached Investment Cost Analysis sheet attached hereto as Exhibit "A" and made a part of this agreement.

. . . . .

3—Such borrowed amount shall be paid back to Lender in equal monthly installments along with simple interest of (10%) annually and a balloon payment of any remaining principle [sic] and interest at the end of the three year term pursuant to Exhibit "B" Repayment Schedule attached hereto.

(Plaintiffs' Exhibit 2). No Investment Cost Analysis is attached as Exhibit A as indicated in the text of the Note.

Exhibit B to the Note indicates that only $6,000.00 of the total Note amount was actually advanced in cash, and that the $6,000.00 cash advance was to be repaid by the Debtor in periodic payments of $193.60 per month. The remaining $4,000.00 reflected in the original Note amount represents consulting services provided to the Debtor by Robert Brillon, and was to be repaid in family memberships in the Debtor's fitness studio. Finally, the Note provided that Karen Brillon "shall have a security interest in all tangible assets of Borrower including movable equipment, furniture, fixtures and the like until such loan is fully recouped." (Plaintiffs' Exhibit 2).

Around the same time that the Debtor signed the Note to Karen Brillon (October of 2004), Susan Shannahan (Shannahan) loaned the Debtor an additional sum of $5,000.00 to open his martial arts studio. (Plaintiffs' Exhibit 2; Transcript, p. 14).

Shannahan is the Debtor's girlfriend. (Transcript, pp. 13, 104–05). On December 19, 2004, Shannahan purchased certain fitness equipment from Play It Again Sports for use in the Debtor's business. The equipment purchased from Play It Again Sports included a machine known as a Universal Gym. (Transcript, pp. 18, 103). The total amount of the purchase was approximately $3,600.00, which Shannahan charged on her credit card. (Transcript, p. 15).

On January 1, 2005, the Debtor signed a Promissory Note payable to Sabra and Douglas Libertore (the Libertores) in the original principal amount of $10,000.00. (Plaintiffs' Exhibit 2). The Note is similar, but not identical, in form to the Note payable to Karen Brillon, and provided for the Debtor to repay the loan in periodic payments of $322.67 per month. The Note also provided that the Libertores acquired a security interest in all of the Debtor's tangible assets.

In addition to the loans from Karen Brillon, Susan Shannahan, and the Libertores, the Debtor also borrowed the sum of $5,000.00 from Angela and Brian Long, and the sum of $2,500.00 from Vivian and Herman Birkner, in connection with the start-up of his martial arts school.

The loan proceeds were used in large part to pay for the build-out of the leased space on Clark Road, to purchase flooring for the Clark Road studio, to pay the security deposit for the leased space, to pay the first month's rent, and to pay the studio's expenses for the first two months of operation. (Transcript, pp. 77, 140–41) Further, a portion of the loan proceeds was deposited into a bank account opened in the name of Reggie's Fit N Kick, Inc. (Transcript, pp. 79, 131; Debtor's Exhibit 6). Approximately $9,000.00 from the business account was used to purchase additional fitness equipment for the studio. (Transcript, pp. 60, 137).

The Debtor opened his martial arts studio in early 2005, and hosted a "grand opening" on May 5, 2005. (Transcript, pp. 95–97).

The lease payments due on the Clark Road premises were not made for the month of May, 2005, or any subsequent months. (Debtor's Exhibit 8).

Subsequent to his initial default under the Clark Road lease, the Debtor's studio relocated to a site on Proctor Road in Sarasota. (Transcript, pp. 17–18, 22). At the time of the relocation, the fitness equipment used in the Debtor's studio was moved to the Proctor Road site. The Debtor obtained a loan from T.J. McNally in the amount of $8,000.00 to facilitate the relocation. (Transcript, p. 98).

On April 18, 2006, Robert Brillon obtained a Final Judgment against the Debtor in the County Court of Sarasota County, Florida in the amount of $2,098.78. On the same date, the Libertores obtained a Judgment against the Debtor in the amount of $3,269.71. (Plaintiffs' Exhibit 2).

On October 18, 2006, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. As of the date of the bankruptcy petition, a substantial portion of the equipment previously used in the Debtor's studio was located at a gym known as Ripped Fitness on Stickney Point Road in Sarasota. The Debtor teaches martial arts and other classes at Ripped Fitness under an "independent contractor" arrangement with T.J. McNally, the owner of the gym. (Transcript, p. 94).

Additionally, as of the date of the bankruptcy petition, the exercise machine known as the Universal Gym was located at Susan Shannahan's home. (Transcript, pp. 18–19, 103).

## Discussion

The Plaintiffs commenced this action by filing a Complaint to deny the Debtor's discharge. The Plaintiffs contend that the Debtor's discharge should be denied in his bankruptcy case pursuant to § 727(a)(2)(A), § 727(a)(4), and § 727(a)(5) of the Bankruptcy Code. (Transcript, p. 7).

■ "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." F.R.Bankr.P. 4005. Specifically, the plaintiff must establish all of the required elements of its objection by a preponderance of the evidence. *In re Zwirn*, 2005 WL 1978510, at *2 (Bankr.S.D.Fla.2005)(citing *In re Slater*, 318 B.R. 881, 886 (Bankr. M.D.Fla.2004)). Generally, objections to discharge should be liberally construed in favor of the debtor and the debtor's fresh start, and against the objecting party. *In re Zwirn*, 2005 WL 1978510, at *2(Citations omitted).

## I. Section 727(a)(2)(A)

 Section 727(a)(2)(A) of the Bankruptcy Code provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A). A plaintiff must establish two elements in order to prevail under this section: (1) the disposition of property, including transfer or concealment, within one year of the bankruptcy petition, and (2) the debtor's subjective intent to hinder, delay, or defraud creditors by disposing of the property. *In re Montgomery*, 2007 WL 625196, at *2 (Bankr.E.D.Tenn.2007). The section requires proof of actual fraudulent intent. Constructive fraud is not sufficient. *In re Montgomery*, 2007 WL 625196, at *2.

In this case, the Plaintiffs contend that the Debtor fraudulently transferred certain fitness equipment used in his martial arts studio within one year of the filing his bankruptcy petition.

According to Robert Brillon (Brillon), the equipment used in the studio originated from three sources: equipment previously owned by the Debtor; equipment purchased after October 1, 2004, for the approximate sum of $9,000.00 (representing a portion of the loan proceeds acquired by the Debtor from Brillon and the other individual lenders); and equipment purchased by Susan Shannahan (Shannahan) from Play It Again Sports in December of 2004. (Transcript, pp. 60, 77–78, 137–39, 157–58). Brillon further contends that a description of at least a portion of the equipment appears on the UCC Financing Statement filed with the Secretary of State to perfect his security interest in the Debtor's assets. (Transcript, pp. 50–51, 157–58).

It is clear that the equipment was originally located at the premises on Clark Road while that studio was in operation, and was later moved to Proctor Road when the studio relocated. (Transcript, pp. 17–18, 22, 52, 81, 98). The Proctor Road studio subsequently closed, and a large portion of the equipment was again relocated to Ripped Fitness on Stickney Point Road, where it remained at the time that the bankruptcy petition was filed. (Transcript, pp. 23–24, 53, 81, 142–43). Additionally, at the time that the other equipment was moved to Ripped Fitness, the exercise machine known as a Universal Gym was moved to Shannahan's home. (Transcript, pp. 18, 36, 103, 144).

The Plaintiffs assert that the equipment was fraudulently transferred. (Doc. 1, ¶ 8).

 The Plaintiffs, however, have failed to satisfy their burden of proof under § 727(a)(2)(A) of the Bankruptcy Code. The term "transfer" is defined in the Bankruptcy Code as follows:

**11 U.S.C. § 101. Definitions**

. . . . .

(54) The term "transfer" means

(A) the creation of a lien;

(B) the retention of title as a security interest;

(C) the foreclosure of a debtor's equity of redemption; or

(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with—

(i) property; or

(ii) an interest in property.

11 U.S.C. § 101(54). Generally, this definition is intended to be interpreted as broadly as possible. *In re Gauvreau,* 375 B.R. 14, 19 (Bankr.D.Me.2007).

■ In this case, the Plaintiffs suggest that T.J. McNally (McNally), the proprietor of Ripped Fitness, may have acquired an ownership interest in the equipment in exchange for his loan or his extension of space to the Debtor. (Doc. 1, ¶ 8; Transcript, pp. 161–62).

There is no evidence, however, that the equipment has been transferred to McNally within the meaning of the Bankruptcy Code. The Debtor testified that his arrangement with McNally simply provides for him to teach fitness classes at McNally's gym, in exchange for the Debtor's ability to use the space to teach his own martial arts classes. (Transcript, p. 94). At the § 341 meeting of creditors, the Debtor testified that the equipment was located at Ripped Fitness, where he worked as an independent contractor, but that he remained in possession of the equipment. (Debtor's Exhibit 5, p. 6). The Debtor further testified at his creditors' meeting:

Q: Have you promised or pledged any of this equipment or assets to anyone other than the five investors?

A: No.

Q: Have you ever discarded, transferred it, moved it, the fitness equipment, from the original Clark Road location?

A: That's where it is now which is Stickney.

Q: So it's safe to say that the equipment and the assets are basically intact? There's nothing sold?

A: Correct.

. . . . .

Q: Did you promise anything else to Mr. Todd McNally in the form of pledging him the assets or the equipment of your company?

A: No.

(Debtor's Exhibit 5, pp. 11, 17). The Debtor's testimony in this regard is corroborated by that of Shannahan, who indicated that no one had acquired any ownership interest in the equipment that was initially purchased for the Debtor's studio and later moved to Ripped Fitness. (Transcript, pp. 23–24). Additionally, the Debtor testified at trial that the equipment currently located at Ripped Fitness is owned by his dissolved corporation. (Transcript, p. 145).

In short, the Plaintiffs did not present any testimony or documentary evidence to show that any of the equipment was transferred to McNally in the year prior to the bankruptcy filing. McNally's testimony was not introduced, either as a witness at trial or by way of deposition transcript, and no bills of sale or other documents were presented to evidence any transfer of the equipment to McNally. The Debtor and Shannahan both indicated that no such transfer occurred, and no other evidence of the alleged transfer was presented by the Plaintiffs.

■ Secondarily, the Plaintiffs suggest that the possession by Shannahan of the Universal Gym is the result of a fraudulent transfer.

The Debtor and Shannahan acknowledge that this single piece of equipment was moved to Shannahan's home when the Debtor closed his studio on Proctor Road. (Transcript, pp. 18, 36, 103). Shannahan

had originally purchased the Universal Gym from Play It Again Sports in December of 2004 with her personal credit card, and had repaid the credit card debt in its entirety. (Transcript, pp. 15–16, 18–19). Shannahan testified that she gained possession of the equipment because she "paid it off," and because the Debtor was moving his studio to a new location. (Transcript, p. 19). The Debtor testified:

Q: Did you hear her testify about having a Universal machine at her house?

A: Correct.

Q: And was that a machine that had been purchased from Play It Again Sports?

A: Correct.

Q: Did you give that to her to take to her house?

A: That was hers to take, and we couldn't fit it.

Q: You couldn't fit it in the—

A: We couldn't fit the rest of the corporation's assets into the dojo.

Q: And so you gave it to her or you let her take it?

A: She's one of the lienholders, the people that I owe to. So they had every right as a lienholder. And besides, it wouldn't fit in the dojo anyway.

(Transcript, p. 103). The Debtor further testified that the machine had suffered considerable wear and tear from its use in the studio, and was probably worth less than $100.00. (Transcript, p. 144).

Under these circumstances, the Court finds that the Debtor did not transfer the Universal Gym to Shannahan with the intent to hinder, delay, or defraud his creditors or the estate.

The Plaintiffs did not satisfy their burden of proof under § 727(a)(2)(A) of the Bankruptcy Code with respect to any of the equipment that was used in the Debtor's martial arts studio.

## II. Section 727(a)(4)

Section 727(a)(4) of the Bankruptcy Code provides:

**11 U.S.C. § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4). To prevail under § 727(a)(4), a plaintiff must show (1) that the debtor made a statement under oath, (2) that the statement was false, (3) that the debtor knew the statement was false, (4) that the debtor made the statement with the intent to deceive, and (5) that that the statement related materially to the bankruptcy case. *In re Offer*, 2007 WL 1560131, at *4 (Bankr.S.D.Fla.2007). The section relates to both affirmative false statements and omissions. *In re Montgomery*, 2007 WL 625196, at *3.

The purpose of the section is "to ensure that adequate information is available to those interested in administration of the estate without need of examinations or investigations to determine whether the information is true in the bankruptcy petition." *In re Offer*, 2007 WL 1560131, at *4.

In this case, the Debtor filed his Schedule of Assets and Liabilities and his Statement of Financial Affairs with his bankruptcy petition on October 18, 2006. On his Schedule of Personal Property, the Debtor listed a "100% ownership in Reggie's Fit & Kick, Inc. (dissolved corporation)" valued at "0.00," accounts receivable valued at $600.00, and "misc. martial arts equipment" valued at $300.00. On his Schedule I, the Debtor claimed that he is a martial arts instructor employed by "Reg-

gie's Elite Karate & Fitness, Inc." On his Statement of Financial Affairs, the Debtor listed two closed business bank accounts, repayments to Shannahan of a loan for martial arts equipment, and a karate studio previously operated at two locations in Sarasota. (Plaintiffs' Exhibit 1).

The Debtor concedes that the identification of his employer as "Reggie's Elite Karate & Fitness, Inc." on his Schedules is a misnomer, that no such corporation exists, and that "Reggie's Elite Karate" is "just a name I came up with." (Transcript, pp. 147–48).

In any event, the Plaintiffs contend that the Debtor failed to disclose, or inaccurately disclosed, the following information on his bankruptcy paperwork:

1. The existence of computer records regarding the Debtor's studio.

2. The loan from McNally in the amount of $8,000.00.

3. The arrangement with McNally for the use of the Debtor's equipment.

4. The value of the equipment.

5. Either the ownership of the fitness equipment by the Debtor, or the transfer of the equipment to McNally.

6. The turnover of the Universal Gym to Shannahan.

(Doc. 1; Transcript, pp. 159–62). The Plaintiffs acknowledge that no single inaccuracy or nondisclosure on the Debtor's schedules, standing alone, warrants denial of the Debtor's discharge pursuant to § 727(a)(4) of the Bankruptcy Code. Instead, the Plaintiffs contend that the Court must evaluate the nondisclosures as a pattern of conduct intended by the Debtor to minimize the scheduled value of his bankruptcy estate. (Transcript, pp. 8–9, 162–63).

The Court has viewed the evidence in its totality, and finds that the Plaintiffs have failed to establish that the Debtor know-

ingly and fraudulently made a false oath on his bankruptcy schedules within the meaning of § 727(a)(4).

First, for example, the Plaintiffs assert that the Debtor failed to disclose the existence of a computer which would provide information regarding the studio's business affairs.

The Debtor is not an experienced businessman, and had never operated a business before opening the studio on Clark Road in early 2005. (Transcript, pp. 130, 146–48).

A used computer was contributed to the studio as a donation, apparently to assist the Debtor in maintaining the studio's records. Although a Quickbooks program was installed on the computer, the Debtor testified that he was not computer literate, and did not know how to generate invoices or create membership records on the computer. According to the Debtor, his role in the business was simply to teach fitness classes and work with the gym's members. Other individuals assisting in the studio generally handled the business records. At trial, the Debtor did not appear to know what type of information was entered or maintained on the computer. (Transcript, pp. 106–08, 110–11). The computer was stored at Ripped Fitness for a time, and was later moved to the home where the Debtor is staying with a friend. (Transcript, pp. 24, 106).

Second, the Debtor acknowledged his receipt of a loan from NcNally in the amount of $8,000.00, and also acknowledged that the loan was not disclosed on his schedule of liabilities. The Debtor further testified, however, that he receives credit on the loan whenever he teaches a class at Ripped Fitness, and that he has "no idea" of the amount that remains due on the loan. According to the Debtor, he just takes McNally's word for how much is

due, even though he doesn't know whether McNally has ever given him an accounting. (Debtor's Exhibit 5, pp. 16–17; Transcript, pp. 99–101).

Third, with respect to the equipment, the Debtor listed "miscellaneous martial arts equipment" on his Schedule of Personal Property, and ascribed a value to the equipment of $300.00. (Plaintiffs' Exhibit 1).

At trial and at his creditors' meeting, the Debtor testified that he did not further identify any equipment on his schedules because he believed that it was owned by the corporation known as Reggies Fit & Kick, Inc. (Debtor's Exhibit 5, pp. 5–6; Transcript, p. 145). The Plaintiffs appear to assert that the Debtor's explanation in this regard is not credible because the corporation had been dissolved before the equipment was purchased. The Lease for the Clark Road premises, however, named the Debtor "of Reggie Fit and Kick, Inc. a Florida corporation" as lessee, and a bank account was maintained in the name of "Reggies Fit N Kick, Inc." when the equipment was acquired and while the studio was in operation. (Debtor's Exhibits 6, 7).

Significantly, the Plaintiffs did not establish that the Debtor learned of the corporation's dissolution before the equipment was purchased, or that he has ever gained any understanding of the effect of the corporation's dissolution, even as of the date of trial. (Transcript, pp. 112–17, 144–45).

Fourth, as shown above, the Plaintiffs did not prove that the Debtor transferred any fitness equipment to McNally when he moved his martial arts classes to Ripped Fitness.

Fifth, the Plaintiffs did not prove that the value of the equipment was significantly greater than the scheduled value of $300.00. The Debtor testified at trial that the equipment was worth "at most $450.00," a difference of $150.00 from the scheduled value. (Transcript, p. 143). The Debtor further testified that the equipment had experienced substantial wear and tear because of its use in the gym, and was no longer in new condition. (Transcript, pp. 143–44). In contrast, the Plaintiffs did not present any independent evidence of the value of the equipment, or any proof that the Debtor's estimate of the value of the used equipment was significantly in error.

Finally, with respect to the Universal Gym that is currently in Shannahan's possession, the evidence indicates that Shannahan had paid for the machine, and that it was moved to her home because of limited space at Ripped Fitness. (Transcript, pp. 15–16, 18–19, 103). The only evidence in the record regarding the machine indicates that it is used and worn, and probably worth less than $100.00. (Transcript, p. 144). Under these circumstances, the omission of the machine's relocation to Shannahan's home does not constitute a knowing and fraudulent false oath on the Debtor's Statement of Financial Affairs.

■ As a general rule, of course, multiple inaccuracies in a debtor's schedules may indicate the debtor's fraudulent intent or, at a minimum, the debtor's cavalier disregard for the truth. *In re Unger*, 333 B.R. 461, 468 (Bankr.M.D.Fla.2005).

In this case, however, the Debtor, although not an experienced businessman, testified candidly and credibly at trial. The Court has evaluated the evidence in its entirety, and finds that the errors on the Debtor's schedules were not intentional or fraudulent, and that they were not designed to deceive the Trustee or creditors of the estate. See *In re Wingate*, 377 B.R. 687 (Bankr.M.D.Fla.2006) and *In re*

*Hosmer,* 2004 WL 1964509 (Bankr. M.D.Fla.).

The Plaintiffs did not satisfy their burden of proof under § 727(a)(4) of the Bankruptcy Code.

### III. Section 727(a)(5)

■■■ Section 727(a)(5) of the Bankruptcy Code provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5). For a debtor's discharge to be denied under § 727(a)(5), a plaintiff must establish that the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; that on the date of filing the bankruptcy petition the debtor no longer had the particular asset; and that the debtor was unable to furnish a satisfactory explanation for the non-existence of the asset when called upon to do so. *In re Hahn,* 362 B.R. 542, 548 (Bankr.S.D.Fla.2007); *In re Offer,* 2007 WL 1560131, at *5.

■■■ In this case, the Plaintiffs assert that the Debtor has failed to satisfactorily explain the loss of the assets that were purchased with the proceeds of their loans. (Doc. 1, ¶ 16; Transcript, p. 161).

The aggregate amount of the loan proceeds from all of the individual lenders was approximately $28,500.00, representing $5,000.00 from the Shannahans, $5,000.00 from the Longs, $6,000.00 in cash from the Brillons, $2,500.00 from the Birkners, and $10,000.00 from the Libertores. (Plaintiffs' Exhibit 2). The loans were made between October 1, 2004, and January of 2005. (Transcript, pp. 48–49).

The testimony shows that the loan proceeds were used in large part to pay for the build-out of the leased space on Clark Road, to purchase flooring for the Clark Road studio, to pay the security deposit for the leased space ($7,500.00, according to the Lease), to pay the first month's rent ($4,511.46, according to the Lease), and to pay the studio's expenses for the first two months of operation. (Debtor's Exhibit 7; Transcript, pp. 77, 140–41).

In addition to the expenditures listed above, Brillon testified that approximately $9,000.00 of the loan proceeds was used after October 1, 2004, to purchase equipment for the Debtor's studio. The expenditures described by Brillon include payments for machines acquired from Play It Again Sports. (Transcript, pp. 60–61). Brillon further contends that the equipment initially located on Clark Road is listed "in general terms" on the Financing Statement prepared to perfect his security interest in the Debtor's assets. (Transcript, pp. 50–51).

The Plaintiffs failed to satisfy their burden of proof under § 727(a)(5) of the Bankruptcy Code.

The evidence clearly establishes that the equipment used in the Debtor's studio was initially located at the Clark Road site, was later moved to premises on Proctor Road, and was located at Ripped Fitness at the time that the bankruptcy petition was filed.

In other words, approximately two years elapsed between the original purchases of equipment for the Debtor's studio, and the filing of the Debtor's bankruptcy petition. During the two-year period, the equipment was moved twice, was used by the members of the Debtor's studio, and suffered the normal wear and tear associated with

use by the public. Further, the Plaintiffs acknowledge that at least some of the original equipment is now located at the Ripped Fitness gym.

Essentially, the Plaintiffs have not proven that any substantial, identifiable item of equipment, as described in Brillon's Financing Statement or otherwise owned by the Debtor, is no longer in the Debtor's possession. Additionally, the Plaintiffs have not proven that any identifiable equipment acquired for the Debtor's studio was inexplicably lost. The Plaintiffs have not shown, for example, that specific items of equipment listed in the Financing Statement are not the subject of normal attrition, or are not currently located at the Ripped Fitness facility.

The Plaintiffs did not satisfy their burden of proof under § 727(a)(5) of the Bankruptcy Code.

### Conclusion

The Plaintiffs commenced this adversary proceeding by filing a Complaint to Deny Discharge under 11 U.S.C. § 727. The Court has considered the entire record in this proceeding, and finds that the Plaintiffs did not establish that the Debtor fraudulently transferred property within the meaning of § 727(a)(2)(A), that the Debtor knowingly and fraudulently made any false oaths within the meaning of § 727(a)(4), or that the Debtor failed to explain satisfactorily a loss of assets within the meaning of § 727(a)(5) of the Bankruptcy Code. Consequently, a Final Judgment should be entered in favor of the Debtor, and against the Plaintiffs, in this case.

Accordingly:

**IT IS ORDERED that:**

1. Final Judgment shall be entered in favor of the Debtor, Reginald D.J. Walden, and against the Plaintiffs, Robert and Karen Brillon and Douglas and Sabra Liber-

tore, on the Plaintiffs' Complaint to Deny Discharge under 11 U.S.C. § 727.

2. A Discharge of Debtor shall be entered in the Debtor's Chapter 7 case.

3. A separate Final Judgment shall be entered consistent with this Opinion.